# IN THE COURT OF APPEALS OF IOWA

No. 18-0710
Filed June 5, 2019

**DANIEL FELT and SUSAN KERN,**
        Plaintiffs-Appellants,

**vs.**

**DAVID FELT and FELT FARMS LLC,**
        Defendants-Appellees.
_____

Appeal from the Iowa District Court for Dallas County, Bradley McCall, Judge.

Plaintiffs challenge whether Felt Farms LLC had any members within ninety days after Richard Felt's death. **REVERSED AND REMANDED.**

Richard McConville and Michael J. Carroll of Coppola, McConville, Carroll, Hockenberg & Flynn, P.C., West Des Moines, for appellants.

Lylea Dodson Critelli and Nicholas Critelli of Critelli Law, P.C., Des Moines, for appellees.

Heard by Vogel, C.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Daniel Felt and Susan Kern (née Felt) appeal the district court ruling, finding a limited liability company (LLC) formed by their father, Richard Felt, did not dissolve following his death. We find the contractual requirements for membership were not met within ninety days of Richard's death, and the LLC dissolved as a matter of law.

## I. Background Facts & Proceedings

Richard Felt was a third-generation Dallas County farmer. Richard farmed with his brother and their father after returning from the Korean War in the 1950s until their father's retirement, then the brothers continued farming with each other. When Richard's brother retired in the late 1980s, they divided their real estate and farming property. Richard's property included approximately one hundred acres west of Waukee that held the house he grew up in and where he and his wife Patricia lived. In 1988, Richard and Patricia executed wills leaving all their property to each other, and then equally to their children upon death of the second spouse.

Richard and Patricia were the parents of three children: Susan, David, and Daniel. In 1990, David joined Richard in a joint farming operation. Richard and Patricia purchased an additional 156-acre farm between Waukee and Adel, which included a house for David's family to live in.[1] As part of their oral farming operation agreement, David purchased any new equipment needed and paid for repairs for the farms and the homes. Approximately ten years after David joined the farming operation, Daniel asked to join the family business; David told Daniel the farms

---

[1]  David and his wife purchased the house and a surrounding five-acre plot from Richard and Patricia in 2012.

could not support another family at that time. Richard and David continued to farm together, and Daniel did not ask again to join.

In the mid-2000s, when Richard mostly retired from farming, Richard and David entered into an oral lease where David paid cash rent and paid a number of Richard and Patricia's bills. Patricia died in 2013. Soon after, Richard was diagnosed with cancer and underwent treatment from late 2013 until shortly before his death on November 4, 2015.

In early 2015, Richard began discussing the creation of a limited liability company (LLC) with his attorney, Sam Braland. Richard was interested in potential tax benefits and wanted to keep the farms in the family. Braland had not previously formed a LLC, so he studied the Iowa LLC statutes and obtained a template of a farm LLC from the Iowa State Bar Association. He did not consult with an attorney with more LLC experience. Braland drew up a certificate of organization and an operating agreement. On August 28, Richard signed the organizational documents and operating agreement for a manager-managed LLC named Felt Farms LLC. Richard transferred all his real property to the LLC in exchange for ownership of 100 Class A Units (income units) and 900 Class B Units (ownership and voting units).[2] Richard and David were appointed and signed the agreement as managers of the LLC, and Richard signed separately as its only member.[3] Richard did not change his will, which continued to leave his property in equal

---

[2] At the same time, Richard also transferred two buildings on the farms to David. The buildings were transferred to David for no consideration due to his extensive remodeling of the buildings at his own cost to create a storage business.
[3] David testified to knowing he was not a member of the LLC when he signed the operating agreement as manager.

shares to his children. Richard did not tell Daniel or Susan anything about the LLC.

Braland also prepared power-of-attorney documents granting David the authority to make decisions on behalf of Richard. In the months prior to Richard's death, David took action as financial power-of-attorney to change several of Richard's investments to payable-on-death accounts evenly split among himself and his siblings. He also transferred some deposits to the LLC to fund its operation. Richard died on November 4. After Richard's death, David used Richard's remaining funds to pay funeral and other outstanding expenses, then split the remainder evenly among himself and his siblings. Richard's will was not admitted to probate until September 2017.

Following Richard's death, David informed Daniel and Susan the family properties were in an LLC. In December 2015, Braland wrote to the siblings to provide them documents relating to Richard's estate. The letter informed the siblings,

> With regard to the limited liability company, the three of you have succeeded in equal shares to all ownership units of the company. I believe it would be prudent for all of us to meet in January for the purpose of issuing certificates of ownership to each of you, and to briefly discuss the operation of the company, and to answer questions you might have.

The parties did not meet with Braland in January. Effective January 14, 2016, David obtained liability insurance for Felt Farms LLC, which he verified covered him and his siblings as members on May 4, 2016. The named insured parties for the farms' property insurance was changed to Felt Farms LLC and David superseded Richard effective November 5, 2015. Susan and Daniel

consulted with their own attorney regarding the LLC and its implications during this period.

In September 2016, Braland consulted with another attorney with more experience in LLCs. After learning of the distinction between transferees and members, David issued equal interests to himself, Susan, and Daniel. On October 18, Daniel and Susan proposed a member-managed LLC or partition of the land. David did not agree to the proposed changes.

In December 2016, David wrote checks to himself and his siblings from the Felt Farms LLC checking account. David termed the payments as 2016 distributions which consisted of cash rent David had paid the LLC and money in the account prior to Richard's death. All three siblings cashed their checks.[4] The LLC provided K-1s to each of the siblings for tax purposes.[5] In March 2017, David unilaterally under his authority as manager arranged for a letter of credit for the LLC, and signed the documents under his authority as manager of the LLC.

On February 21, 2017, Daniel and Susan filed suit challenging the creation of the LLC and some of Richard's inter vivos transfers under several theories— including three types of tortious interference and elder abuse—and requesting declaratory judgment on the status of the LLC. They alleged David exercised undue influence on Richard and questioned Richard's mental competence. In September, Daniel and Susan filed a motion for summary judgment, in part alleging the LLC had no members within ninety days of Richard's death. The court

---

[4] David also wrote checks to each of the siblings in December 2017. Daniel and Susan had not cashed the checks at the time of trial.
[5] The K-1s have each person checked as a "resident partner," and on the bottom of the page the word "Member" is typed in with the sibling's name.

ruled "in the light most favorable to the Defendants," the LLC had a member, David, within the ninety day period.

From February 19 through 23, 2018, the Daniel and Susan's claims were tried to the bench with numerous witnesses from each side. In its ruling, the court dismissed all counts against David and Felt Farms LLC. The court specifically found David became a Class A member within ninety days of Richard's death. On appeal, Daniel and Susan challenge the district court's interpretation and construction of the LLC operating agreement and the determination of David's membership in the LLC following Richard's death.

## II. Standard of Review

"We generally review the construction and interpretation of a contract as a matter of law. Thus, we are not bound by the construction or interpretation made by the trial court." *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999). "Contract '[i]nterpretation involves ascertaining the meaning of contractual words; construction refers to deciding their legal effect.'" *Payton v. DiGiacomo*, 874 N.W.2d 673, 677 (Iowa Ct. App. 2015). The construction of a contract is reviewed as a question of law for the court. *RPC Liquidation v. Iowa Dep't of Transp.*, 717 N.W.2d 317, 321 (Iowa 2006). The construction of a contract is controlled by intent of the parties, which we determine by the language of the contract itself. Iowa R. App. P. 6.904(3)(n); *see Hartig Drug Co.*, 602 N.W.2d at 797.

## III. Governing Law

The governing statutory provisions are found in Iowa's Revised Uniform Limited Liability Company Act—Iowa Code chapter 489 (2015). However, the operating agreement governs the LLC, with the statutory provisions governing

where the operating agreement does not otherwise provide. Iowa Code § 489.110(1)–(2).

**A.** **Operating Agreement.** The applicable contract here is the LLC's operating agreement. The operating agreement establishes Felt Farms as a manager-managed LLC. Section 2.03 of the agreement separates the ownership and income rights relating to the LLC. Income rights are vested in the Class A units of the company.[6] One hundred Class A units were issued at formation. Class B units represent voting and ownership rights. Nine hundred Class B units were issued at formation. Becoming a unit holder in the company does not admit the holder to membership in the company. The transfer of Class A units requires written consent from the manager. The transfer of Class B units requires unanimous approval of the Class B members. A non-member unit holder has the right to receive allocations and distributions relating to the units held but no voting rights. The operating agreement requires any "person admitted as an additional or substitute Member shall execute a Joinder Agreement and thereby become a party to this Agreement" and then obtain the rights, powers, duties, and obligations of a member.[7]

A member is dissociated from the company upon the member's death. Death of a member only causes dissolution of the company if it makes the LLC ineligible to conduct its activities, it becomes unlawful or impossible for the LLC to

---

[6] However, under the operating agreement the manager has sole discretion to distribute income to Class A unit holders, Class B unit holders, or any person or entity holding no units of the company.

[7] The record does not include a joinder agreement signed by any of the siblings.

carry on its business, or if the death causes an event requiring dissolution under the LLC act.

The operating agreement grants the managers—Richard and David at the time of formation—the right to independently make any and all decisions relating to the LLC except for six enumerated actions requiring approval of the members holding all of the ownership units to the LLC.[8] The manager has the sole authority to buy or sell company assets—including land—borrow money, execute any contracts relating to the company, distribute funds, and decide "any matter relating to the activities of the Company." The manager also has the sole authority to transfer Class A units, redeem Class A units, admit Class A members, and expel Class A members.

**B.** **Applicable statutory law.** The Iowa LLC Act provides a person can become a member after the LLC has formed when:

> a. As provided in the operating agreement.
> b. As the result of a transaction effective under article 10 [Merger, Conversion, and Domestication].
> c. With the consent of all the members.
> d. If, within ninety consecutive days after the company ceases to have any members, all of the following occur:
>> (1) The last person to have been a member, or the legal representative of that person, designates a person to become a member.
>> (2) The designated person consents to become a member.

Iowa Code § 489.401(4). "A person that becomes a member of a limited liability company is deemed to assent to the operating agreement." *Id.* § 489.111. The

---

[8] The six actions requiring member approval are reorganization, dissolution, disposition of all or substantially all assets in a single plan, amendment of the operating agreement, the transfer of Class B units and admission or expulsion of Class B members, and the removal and appointment of managers.

transfer of a transferable interest—referred to as units in this operating agreement—does not entitle the transferee to participate in the management or conduct of the company's activities or have access to company records, but does entitle the transferee to receive distributions the transferor would have been entitled to. *Id.* § 489.502(1)–(2). A member is not required to possess a transferable interest, and holding a transferable interest does not entitle a transferee to membership. *See id.* §§ 489.401(5), .502(7).

"A limited liability company is dissolved, and its activities must be wound up, upon the occurrence of the following: Once the company has at least one member, the passage of ninety consecutive days during which the company has no members." *Id.* § 489.701(1)(c). "A person is dissociated as a member from a limited liability company when . . . the person dies." *Id.* § 489.602(6)(a). "[T]he company continues after dissolution only for the purpose of winding up." *Id.* § 489.702(1).

## IV. Analysis

Both the operating agreement and the statutes make clear membership is not the same as possession of a transferable interest. *See id.* § 489.401(5). The parties do not dispute the units transferred equally to David, Daniel, and Susan upon Richard's death. *See id.* § 633.350. As unit holders, each had a right to allocations and distributions from the LLC.

The only question before us is whether the LLC had a member in compliance with the operating agreement within the ninety days following Richard's death—between November 4, 2015, and February 2, 2016. Once the

ninety days passed, if the LLC had no member it dissolved as a matter of law. *See* Iowa Code § 489.701.

**A.    Before Richard's death.**  Under the operating agreement, Richard was the only member upon the formation of the LLC.  Richard owned all units of ownership (B units) and income rights (A units).  Richard did not name any of his children as noneconomic members at the time of formation or any time before his death.  Notwithstanding a provision naming David as "Tax Matters Member," the operating agreement expressly lists Richard as the only member in three places: the preamble, Exhibit A of the agreement listing initial member contributions, and on the execution page of the agreement.  Richard did not transfer any shares to any of the children or invite his children to be members prior to his death.  Nor did David invite himself and consent to be a Class A member prior to Richard's death, despite the authority to do so as manager.  Richard was the only member of the LLC at the time of his death.

**B.    November 5, 2015.**  The parties do not dispute the units transferred ownership upon Richard's death pursuant to Iowa Code section 633.350.  The operating agreement did not include a transfer-on-death provision or any provision establishing any and all of the children as members upon Richard's death.  The district court noted Braland could have advised David of the steps to admit and document the admission of members, including the preparation of a joinder agreement within the ninety-day period if he had understood the law and the operating agreement he drafted, and that Braland failed to do so.

David testified he became Class A member of the LLC upon his father's death, accepting himself as a new member.  The only change in behavior he could

identify with membership was the right to dividends.[9]  David admitted there is no documentation of his admission as a member.  David's expert witness testified David's continuing management of the LLC constituted acceptance of Class A membership.

The district court agreed with David, finding his conduct showed he believed himself to be a manager and a member of the LLC.  The court found this "entirely consistent with the result intended by Dick when he created the LLC."  The court also found David did not need to execute a joinder agreement because he was already a signatory of the operating agreement.

We find David's execution of the joinder agreement was necessary to his membership.  The operating agreement expressly requires, "A person admitted as an additional or substitute Member *shall* execute a Joinder Agreement and thereby become a party to this Agreement, and shall have all the rights and powers and be subject to all the restrictions and obligations of a Member." (Emphasis added.)  David executed the operating agreement in 2015 as *manager*, agreeing to take on and exercise the broad powers and authority of manager for this LLC—including the express permission to engage in self-dealing and permission to buy, sell, or mortgage the LLC's assets as desired.

Without executing a joinder agreement, David has not contracted to accept the rights, powers, duties, and obligations of a member in addition to his rights and obligations as manager.  Because of the express nature of the joinder agreement

---

[9]  Not only were the dividends not issued until December 2016, non-member Class A unit holders have the same right to dividends as Class A members under the operating agreement.  The issuance and acceptance of dividends alone does not evidence membership in the LLC.

requirement, we find it controls over the statutory provision deeming assent to the operating agreement through membership. Moreover, execution of the joinder agreement is a tangible method the operating agreement offers for a new member to show consent to membership given the restricted nature of members' actions.

**C.     November 13, 2015.** When the siblings were working on thank-you notes following Richard's funeral, David informed Daniel and Susan that Richard had placed all his land in an LLC. At that time, David did not offer membership to Daniel or Susan. It is unclear David was able to explain anything about the effects of the LLC, though he did say they would not need an executor and the LLC should minimize expenses.

In the following weeks, David contacted Braland about steps to move forward, and they discussed preparing a letter to send information about the LLC to all three siblings. Susan separately contacted Braland requesting copies of Richard's legal documents, including the LLC documents, Richard's will, and tax returns.

**D.     December 23, 2015.** In response to these requests, Braland sent a letter to the siblings dated December 23, 2015. The letter informed them:

> [L]astly, I enclose documents in connection with the formation of Felt Farms LLC earlier this year. With regard to the limited liability company, the three of you have succeeded in equal shares to all ownership units of the company. I believe it would be prudent for all of us to meet in January for the purpose of issuing certificates of ownership to each of you, and to briefly discuss operation of the company, and to answer any questions you might have.

The letter enclosed a number of other documents, including a copy of Richard's will, living will, medical power of attorney, general power of attorney, recent tax returns, and a copy of the asset inventory filed as part of Patricia's estate.

The letter did not mention membership in the LLC—either to offer membership, indicate membership meant anything, or express he considered David to already be a member. The letter did not include a joinder agreement for any of the siblings to sign to become part of the operating agreement as members, an explanation of any necessary steps they should take, or any other information or documentation to facilitate continuation of the LLC.

Although an expert witness testified the letter was meant as an invitation to membership, the district court disagreed. We find the letter did not constitute an invitation to membership. Whether Braland intended an invitation does not matter, as he was not Richard's legal or personal representative at the time he sent the letter. No will had been entered in to probate for Richard, and Braland had not been retained to represent the estate. Braland, even if acting as attorney for the LLC, was not the legal representative for Richard any longer and did not have the authority under the operating agreement or statute to extend a membership offer to David, Daniel, or Susan.

The district court concluded the December 23 letter "was simply a response to Susan's request for copies of paperwork" and that Braland was unaware of the ninety-day deadline. We find the wording of the letter clearly contemplates the transfer of the units but does not constitute an offer or acknowledgement of Class A or Class B membership. In short, the letter had no effect on whether the LLC had a member within the ninety-day period.

**E.      January 14, 2016.**  Acting as manager, David obtained a liability insurance policy with the LLC as the named insured, which was effective as of January 14, 2016. The declaration page of policy only lists the LLC, it does not

include the name of the manager or any members. The declaration page has a time stamp in the corner with the time "01/15/16 11:03:32," indicating either the policy was obtained at that time or the declarations page was printed then.

On May 4, the insurance agency wrote a letter to David to confirm a conversation earlier that day explaining members are not listed as named insureds on the policy because they are automatically covered by being members. The letter notes, "The members of the LLC that I received are; David Felt[,] Daniel Felt[,] Susan Kern[.]" David had handwritten a note on the bottom of the letter that he had turned in all the names but they did not show on the policy.

David's action listing himself, Daniel, and Susan as members could constitute evidence he intended to consent to membership. However, we do not find David's listing himself as member to a third party remedied the contractual deficiency of the missing joinder agreement.

**F. Conclusion.** The ninetieth day following Richard's death was February 2, 2016. The district court found by a preponderance of evidence that David had consented and become a Class A member of Felt Farms LLC within the statutory period and that Daniel and Susan were deemed to have assented to the operating agreement and membership pursuant to statute. The court reached its decision "with the goal of honoring [Richard]'s intent when he created the LLC."

On our review, we are constrained to construe the contract according to its terms and the statutory law. We determine the intent of the parties forming the company from the language of the contract. *See Hartig Drug Co.*, 602 N.W.2d at 797. The operating agreement only provides one way for a potential member to show agreement to become a member: the joinder agreement. We find none of

the unit holders of Felt Farms LLC complied with the contractual requirements for membership by signing a joinder agreement prior to the expiration of the ninety-day statutory period.  Therefore, the LLC dissolved as of February 3, 2016.

**REVERSED AND REMANDED.**